UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CASEY PEEBLES, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:19CV02660 ERW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Casey Peebles's ("Petitioner") amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. ECF No. 6. The United States ("Government") filed a Response. ECF No. 10. Petitioner filed a Reply. ECF No. 15.

An evidentiary hearing is not warranted, as the § 2255 motion, the files, and the records conclusively show Petitioner is not entitled to relief. *See* 28 U.S.C. § 2255(b); *Roundtree v. United States*, 751 F.3d 923, 925 (8th Cir. 2014) ("A Section 2255 movant is entitled to an evidentiary hearing ... unless the motion, files, and record conclusively show he is not entitled to relief.").

**I.   BACKGROUND**

On October 14, 2015, Petitioner was indicted for conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 and knowingly and intentionally possessing with intent to distribute more than

1

100 grams of heroin in violation of 21 U.S.C. § 841(a)(1).[1]  CD ECF No. 327.  On October 7, 2016, following a jury trial, Petitioner was convicted of both counts.  CD ECF No. 621.  On January 3, 2017, Petitioner was sentenced to 120-months' imprisonment, and an eight-year term of supervised release.  CD ECF No. 706.  Petitioner filed a direct appeal with the United States Court of Appeals for the Eighth Circuit.  CD ECF No. 769.  The Eighth Circuit affirmed the judgment of this Court.  CD ECF No. 775.  Petitioner then filed the current motion, asserting his conviction should be set aside because his counsel was ineffective.  ECF No. 6.

## II.    STANDARD

A federal prisoner who seeks relief under 28 U.S.C. § 2255 on grounds "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  To obtain relief under § 2255, the petitioner must establish a constitutional or federal statutory violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (*quoting United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)).

Claims brought under § 2255 may be limited by procedural default.  A petitioner "cannot raise a non-constitutional or non-jurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not."  *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir.

---

[1] See Criminal Case *United States v. Thomas Rander et al*, No. 4:14CR345 ERW.  CD ECF will indicate citations to the criminal case docket in this matter.

1994). Claims, including those concerning constitutional and jurisdictional issues, unraised on direct appeal cannot subsequently be raised in a § 2255 motion unless the petitioner establishes "(1) cause for default and actual prejudice or (2) actual innocence." *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (*citing Bousley v. United States*, 523 U.S. 614, 621–22 (1998)).

However, ineffective assistance of counsel claims may be raised for the first time in a § 2255 motion even if they could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). This exception is in place to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* Additionally, a petitioner's attorney may serve as counsel for both the trial and appellate case, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal. *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

To excuse procedural default, however, a petitioner, raising a constitutional claim for the first time in a § 2255 proceeding, still must demonstrate cause and prejudice. *Anderson*, 25 F.3d at 706. Ordinarily, issues that were raised and decided on direct appeal cannot be relitigated in a § 2255 motion. *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001). Exceptions to this rule are recognized only upon production of convincing new evidence of actual innocence and are available only in the extraordinary case. *Id.*

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*,

3

78 F.3d 343, 347 (8th Cir. 1996) (citation omitted). However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043.

### III. DISCUSSION

Petitioner asserts one ground for why his conviction should be vacated; he claims he received ineffective assistance of counsel. Petitioner claims: (1) at the close of the government's case-in-chief, the close of all evidence, and at the close of the government's closing argument, trial counsel failed to move for a mistrial or curative instructive when the government made prejudicial misrepresentations during opening statement and continued those prejudicial misrepresentations during closing argument which constituted prosecutorial misconduct and prejudiced the defense; (2) trial counsel failed to investigate, contact, interview, subpoena, or depose Joseph Rander, a non-testifying, alleged co-conspirator and co-defendant, prior to trial when Rander's post-trial affidavit reveals Rander's testimony would have squarely challenged Quantiae Harris' testimony (an incentivized confidential informant) particularly when the government's heroin charges rested solely on Harris' alleged eyewitness testimony that Petitioner received heroin from Rander; and (3) at the conclusion of all evidence, trial counsel failed to move for a mistrial where a variance arose when the proof offered at trial departed from the allegations in the Superseding Indictment in that the government may have offered evidence sufficient to establish a crime, but it is not the crime alleged in the Superseding Indictment.

When a habeas petitioner claims ineffective assistance of counsel, the Court's decision must be made "on an ad hoc basis. In each case [the Court] must weigh, among other factors, the time afforded counsel, the experience of counsel, the gravity of the charge, and the complexity of

4

the possible defenses as well as the accessibility of witnesses to counsel." *Wolfs v. Britton*, 509 F.2d 304, 309 (8th Cir. 1975). To be successful on a claim of ineffective assistance of counsel, the petitioner must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Specifically, the petitioner must demonstrate: (1) counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) counsel's "deficient performance prejudiced the defense." *Id.* at 687; *see also Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995). The Court may address the two *Strickland* prongs in any order, and if a petitioner fails to make a sufficient showing on one prong, the Court need not address the other prong. *Strickland*, 466 U.S. at 697; *see also United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003) (finding no need to address the second prong of *Strickland* after petitioner failed to satisfy the first prong).

a. *Failure to move for a mistrial or curative instructive when the Government made prejudicial misrepresentations*

"[A] two-part test determines whether prosecutorial misconduct has occurred: first, the prosecutor's conduct or remarks must have been improper, and second, the remarks or conduct must have prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial." *Graves v. Ault*, 614 F.3d 501, 507 (8th Cir. 2010) (*quoting United States v. White*, 241 F.3d 1015, 1023 (8th Cir. 2001)). Prosecutor's conduct will be held to high standards, and making improper insinuations and assertions misleading the jury constitutes misconduct. *United States v. Johnson*, 968 F.2d 768, 770 (8th Cir. 1992). However, "closing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear." *James v. Bowersox*, 187 F.3d 866,

5

868 (8th Cir. 1999). "The prosecutor must limit the closing argument to 'the evidence and reasonable inferences that may be drawn from it,' although the prosecutor may use colorful language and argue 'a personal interpretation of the evidence.'" *United States v. Mullins*, 446 F.3d 750, 760 (8th Cir. 2006) (*quoting White*, 241 F.3d at 1023).

Regarding trial counsel's deficiency, counsel has no duty to object to a prosecutor's statements which are not misconduct. *Graves*, 614 F.3d at 507; *see also Dyer v. United States*, 23 F.3d 1424, 1426 (8th Cir. 1994) (holding claims deemed meritless cannot be the basis for a claim of ineffective counsel). To determine whether the remarks deprived Petitioner of a fair trial the Eighth Circuit looks at three factors: "[f]irst, we consider the cumulative effect of the misconduct. Second, we examine the strength of the properly admitted evidence of the defendant's guilt. Last, we review the curative actions taken by the district court." *United States v. Beeks*, 224 F.3d 741, 745 (8th Cir. 2000).

Through an examination of the facts, prosecution's argument was not that Petitioner directly gave the drugs to Douglas, but through the heroin's progression of possession, Petitioner transitively gave Douglas the drugs.

First, Quantiae Harris, an informant for the police, testified he witnessed Peebles receive $15,000 to $20,000 worth of heroin from Joseph Rander. Because of Harris' information, police were able to establish surveillance of the location where Petitioner received the heroin. Police witnessed Petitioner enter the residence where Rander and Harris were located and leave approximately fifteen minutes later with a bulky object in his coat. Officers saw Vernon Wescott, sitting in the front passenger seat, exit the vehicle parked outside the residence to urinate. Wescott and Petitioner have distinct physical appearances: Petitioner is short, stocky,

6

and has shorter hair, whereas Wescott is taller, thinner, has longer hair, and a lighter skin complexion. Douglas, located in the backseat of the car, testified that she witnessed Petitioner enter the residence and Wescott exit the vehicle for a moment to urinate. Furthermore, she testified she has seen Petitioner process, dice, bag, and sell controlled substances. She testified he once told her that if they ever get caught, she should hold the drugs in case of a search.

After the surveillance at the residence, investigators conducted a traffic stop of Petitioner's vehicle, where Petitioner was in the driver's seat, Westcott was in the passenger's seat, and Douglas was in the backseat. An officer found 247.3 grams of heroin located on Douglas.

Petitioner looks to both the opening statement and closing argument for the alleged misconduct. Quoting the opening statement, Petitioner claims the prosecution made a materially false statement to the jury when saying: "So it's safe to say that we're looking at somewhere in the neighborhood of [$15,000] to $20,000 worth of heroin that Ms. [Leah] Douglas had on her person that *she received from Mr. Peebles.*" Trial Transcript, Volume I, p. 18, lines 12-16 (emphasis added). Petitioner claims the prosecutor knew Petitioner did not hand the heroin to Douglas and this language directed toward the jury is a blatant misrepresentation of the facts; however, Petitioner's motion did not include prosecution's proceeding statement: "Now, later Ms. Douglas eventually cooperated and the heroin went from Peebles to Vernon Wescott back to Leah Douglas." It is apparent the Government wanted the jury to draw the inference that Petitioner transitively gave the drugs to Douglas.

Petitioner further claims the Government misstated to the jury—through an improper use of pronouns—who in fact gave the drugs to Douglas in its closing statement:

7

> Leah didn't tell you that she saw Casey Peebles with the narcotics. She didn't say that. She didn't even say she saw Casey Peebles hand them to Vernon Wescott/Binky/Bruce Woods . . . . She didn't even say that. She just said she saw, after they got pulled over, ***he*** tossed them back to her. You'll recall the other car stops in this case. Sometimes when you're a drug dealer and something goes south, you do the best you can. You toss it to whoever is next to you. You try to hide it somewhere . . . You do the best you can sometimes and that's what—that's what ***he*** did.

The use of an ambiguous pronoun to hide who retained possession of the drug would be an improper remark; however, that is not what happened here.  Through inference, the Government's argument was that the heroin traveled in the following way: Rander gave the drugs to Petitioner, who then handed the drugs to Wescott, who upon being pulled over tossed the drugs to Douglas.

The prosecutor did not misrepresent the facts to the jury through improper remarks. In both the opening and closing statements, the prosecution either preceded or proceeded with the assertion Petitioner did not give the heroin directly to Douglas.  The Government properly presented its case, which led the jury to reasonably believe the heroin progressed from Petitioner to Douglas.

Petitioner's claim fails on the first prong of the prosecutorial misconduct test. Accordingly, trial counsel had no basis to move for a mistrial or curative instruction.  Petitioner also fails on the second prong of the test; he was not deprived of a fair trial—the evidence introduced by the government sufficiently outweighs the potential effect the statements could have had on the jury.

In *Anderson,* the court held that when looking at the context of the entire trial, the frequency and pervasiveness of the alleged misconduct is of particular importance. *Anderson v.*

*Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). The prosecution's nine extraneous references or remarks were considered limited and did not deprive the defendant of a fair trial. *Id*. Here, Petitioner alleged two instances of improper remarks both of which did not outweigh the Government's presentation of evidence of guilt.

Because Petitioner's trial counsel had no duty to object to the prosecutor's remarks, his failure to do so was not error. *See Garrett v. United States*, 78 F.3d 1296, 1302 (8th Cir. 1996) ("The performance of an attorney is not deficient because the attorney failed to object to admissible evidence."). Petitioner's first claim of ineffective assistance of counsel is denied.

    b. *Failure to interview or call co-conspirator Joseph Rander as a witness at trial*

Reasonable assistance includes adequate investigation, consideration of viable theories, and development of evidence. *Cagle v. Norris*, 474 F.3d 1090, 1097 (8th Cir. 2007). To succeed on the claim of ineffective counsel for failing to contact a potential witness, Petitioner must show that the failure to interview the witness was unreasonable. *Strickland*, 466 U.S. at 691. Moreover, Petitioner can only prevail if he makes "a substantial showing that, but for counsel's failure to interview the witness in question, there is a reasonable probability that the result of his trial would be different." *Id*. at 694.

Here, Petitioner asserts his counsel failed to investigate, contact, interview, subpoena, or depose Joseph Rander, a non-testifying alleged co-conspirator who, based on his post-trial affidavit, would have completely contradicted the critical testimony of an incentivized confidential informant. However, Joseph Rander admitted under oath during his own plea colloquy and in his Guilty Plea Agreement *prior to Petitioner's trial* that he distributed heroin to Petitioner. As such, it was not unreasonable for Petitioner's trial counsel to not interview

9

Rander. Petitioner's trial counsel was not ineffective for his decision not to interview Joseph Rander or call him as a witness. *See United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) ("The decision not to call a witness is a virtually unchallengeable decision of trial strategy."). Therefore, this claim will be denied.

    c. *Failure to move for a mistrial or curative instruction where a variance arose when the Government failed to prove the existence of the single overall conspiracy charged*

Petitioner alleges trial counsel was ineffective in failing to move for a mistrial or curative instruction because a variance arose in that the Government failed to prove the existence of a single conspiracy as charged in the superseding indictment. In order to prove a conspiracy to distribute drugs, the Government needs to prove: "(1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Slagg*, 651 F.3d 832 (8th Cir. 2011) (*quoting United States v. Jiminez*, 487 F.3d 1140, 1146 (8th Cir. 2007)).

Petitioner does not claim the superseding indictment fails to describe the conspiracy of which Petitioner was convicted, but rather that the Government's proof contained evidence of different conspiracies. Petitioner insists there was not a single conspiracy, but three separate conspiracies involving cocaine, marijuana, and heroin, and thus evidence of the cocaine and marijuana conspiracies created a fatal variance.

"A variance between an indictment and the [g]overment's proof at trial occurs if the [g]overment proves multiple conspiracies under an indictment alleging only a single conspiracy." *United States v. Sanchez*, 789 F.3d 827, 835 (8th Cir. 2015), (*quoting United States v. McCauley*, 715 F.3d 1119, 1124 (8th Cir. 2013). "A single conspiracy may exist even if the participants and

10

their activities change over time, and even if many participants are unaware of, or involved in, some of the transactions." *United States v. Donnell*, 596 F.3d 913, 923 (8th Cir. 2010). "Whether trial evidence established a single conspiracy is determined by the totality of the circumstances, including consideration of the nature and location of activities and events, identities of the co-conspirators, and the time frame in which the acts occurred." *Sanchez*, 789 F.3d at 835.

In *Donnell,* the defendant was charged as a member of one overarching conspiracy but contends he was only a member of a conspiracy to distribute ecstasy.  596 F.3d at 923.  The court held conspiracies can have multiple objectives that serve the ultimate purpose of the conspiracy, and each conspirator need not be involved in every objective.  *Id.* at 924.  Similarly, the court in *Lopez-Arce* held a single conspiracy arose where conspirators to the distribution of cocaine and methamphetamine were in the same area and all knew each other.  *United States v. Lopez-Arce*, 267 F.3d 775, 782 (8th Cir. 2001).

Petitioner's claim a variance was created by the evidence introduced through the marijuana and cocaine conspiracies fails.  The existence of multiple types of narcotics does not automatically sever an overarching conspiracy.  Like the defendants in *Donnell* and *Lopez-Arce*, Petitioner did not need to be involved in the distribution of other narcotics to be a co-conspirator.  Rather, the drug trafficking organization to which he belonged was involved in the distribution of various drugs throughout St. Louis.

Here, there was one overarching conspiracy.  Because no variance arose, trial counsel was not ineffective for failing to request a mistrial or curative instruction.

**V.      CERTIFICATE OF APPEALABILITY**

The Court finds Petitioner has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court shall not issue a certificate of appealability as to any claims raised in Petitioner's § 2255 Motion.

Accordingly,

**IT IS HEREBY ORDERED** that Casey Peebles's amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 6] is **DENIED**.  Petitioner's Motion is **DISMISSED, with prejudice**.

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability as to any claim raised in Petitioner's § 2255 Motion.

So Ordered this 11th day of February, 2021.

_E. Richard Webber_
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**